**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISON**

| | | |
|---|---|---|
| ANTONIO ALFARO, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 6:23-cv-462 |
| MIDLAND CREDIT | ) | |
| MANAGEMENT, INC. | ) | |
| | ) | |
| & | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| CHOICE RECOVERY, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| SOUTHWEST RECOVERY | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| TRANS UNION, LLC | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**<u>COMPLAINT AND JURY DEMAND</u>**

COMES NOW, Plaintiff Antonio Alfaro, by and through the undersigned counsel, and for

his Complaint against Defendants Midland Credit Management, Inc. ("MCM"), Choice Recovery, Inc.

("CR"), Southwest Recovery Services, LLC ("SRS"), Equifax Information Services, LLC ("Equifax"),

Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (and

together collectively, "Defendants") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

## JURISDICTION

1.    This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d) and 1681(p).

2.    Venue is proper because Plaintiff resides here, the acts and transactions occurred here, and MCM, CR, SRS, Equifax, Experian, and Trans Union transact business here.

3.    Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4.    Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5.    Plaintiff resides in the city of Eustace, a part of Henderson County, Texas 75124.

6.    The acts that occurred giving rise to this complaint occurred while Plaintiff was in the city of Eustace, a part of Henderson County, Texas 75124, making the Tyler Division a proper venue under 28 U.S. Code § 1391(b)(2).

7.    Defendant MCM, a Kansas corporation headquartered in San Diego, CA, practices as a debt collector throughout the country, including Texas.

8.    Defendant CR, an Ohio corporation headquartered in Columbia, Ohio, practices as a debt collector throughout the country, including Texas.

9.    Defendant SRS, a Texas corporation headquartered in Addison, TX, practices as a debt collector throughout the country, including Texas.

10.    Defendants MCM, CR, and SRS attempt to collect alleged debts throughout the state of Texas, including in Eustace city and Henderson County.

11.    Defendants MCM, CR, and SRS have actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed themselves to the jurisdiction in which Plaintiff resided.

12.    Defendants MCM, CR, and SRS have sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Eustace city and Henderson County and Defendants attempt to collect alleged debts throughout the state of Texas.

13.    Defendants MCM, CR, and SRS knowingly attempted to collect on debts allegedly incurred in Eustace, Texas and thus have sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(1).

14.    Defendant Equifax, a Georgia corporation headquartered in Atlanta, GA, practices as a debt collector throughout the country, including Texas.

15.    Defendant Equifax serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Eustace city and Henderson County.

16.    Defendant Equifax has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant Equifax purposefully availed itself to the jurisdiction in which Plaintiff resided.

17.    Defendant Equifax has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Eustace city and Henderson County and Defendant attempts to collect alleged debts throughout the state of Texas.

18.    Defendant Equifax knowingly reported information regarding a Plaintiff domiciled in Eustace, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

19.     Defendant Experian, a California corporation headquartered in Costa Mesa, CA, practices as a debt collector throughout the country, including Texas.

20.     Defendant Experian serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Eustace city and Henderson County.

21.     Defendant Experian has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant Experian purposefully availed itself to the jurisdiction in which Plaintiff resided.

22.     Defendant Experian has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Eustace city and Henderson County and Defendant attempts to collect alleged debts throughout the state of Texas.

23.     Defendant Experian knowingly reported information regarding a Plaintiff domiciled in Eustace, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

24.     Defendant Trans Union, a Delaware corporation headquartered in Chicago, IL, practices as a debt collector throughout the country, including Texas.

25.     Defendant Trans Union serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Eustace city and Henderson County.

26.     Defendant Trans Union has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant Trans Union purposefully availed itself to the jurisdiction in which Plaintiff resided.

27.     Defendant Trans Union has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Eustace city and Henderson County and Defendant attempts to collect alleged debts throughout the state of Texas.

28.    Defendant Trans Union knowingly reported information regarding a Plaintiff domiciled in Eustace, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

## STANDING

29.    Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

30.    MCM, CR, and SRS's collection activities violated the FDCPA.

31.    Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

32.    Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

33.    "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied her the right to information due to her under the FDCPA."); see also Church v. Accretive Health, Inc., No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy

injury-in-fact requirement).

34.     "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." <u>Lane</u>, 2016 WL 3671467 at *4.

**PARTIES**

35.     Plaintiff, Antonio Alfaro (hereafter "Plaintiff"), is a natural person currently residing in Henderson County, in the state of Texas.

36.     Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

37.     Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

38.     Defendant MCM is a Kansas corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 350 Camino De La Reina, Suite 100, , San Diego, CA 92108.

39.     Defendant CR is an Ohio corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at Columbia, Ohio.

40.     Defendant SRS is a Kansas corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 16200 Addison Rd. Suite 260, , Addison, TX 75001.

41.     MCM, CR, and SRS are each engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

42.     MCM, CR, and SRS regularly collect or attempt to collect defaulted consumer debts due or asserted to be due another and are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

43.     Defendant Equifax is a Georgia corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

44.    Defendant Experian is a California corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

45.    Defendant Trans Union is a Delaware corporation with its principal place of business located at 555 W. Adams Street, Chicago, IL 60661.

46.    Defendants MCM, CR, and SRS are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

47.    Equifax, Experian, and Trans Union are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). Equifax, Experian, and Trans Union regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

a. Public record information;

b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

48.    Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to a creditor other than MCM, CR, and SRS.

49.    On a date better known by MCM, MCM began to attempt to collect an alleged consumer debt from the Plaintiff.

50.    The alleged debt was said to be owed Credit One Bank.

51.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

52.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

53.     The reporting of the alleged debt contains an inaccurate balance.

54.     The reporting of the alleged debt contains an inaccurate status.

55.     The reporting of the alleged debt contains inaccurate delinquency information.

56.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

57.     That MCM was reporting the collection account on Plaintiff's credit report with Equifax, Experian, and Trans Union.

58.     That MCM was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

59.     MCM's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

60.     On or about 07/28/2022, Plaintiff sent dispute letters to Equifax, Experian, and Trans Union notifying the account with MCM as disputed. **Exhibit A, Exhibit B, and Exhibit C.**

61.     These letters provided notice of the inaccurate reporting to Equifax, Experian, and Trans Union.

62.     Once Equifax, Experian, and Trans Union received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case MCM.

63.      Equifax, Experian, and Trans Union received the letters sent by Plaintiff.

64.      Equifax, Experian, and Trans Union transmitted notice of these disputes to MCM via an Automated Credit Dispute Verification form ("ACDV").

65.    MCM was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

66.    Alternatively, Equifax, Experian, and Trans Union failed to send notice of the disputes to MCM after receiving notice of the disputes from Plaintiff.

67.    After receiving this notice, in any subsequent voluntary reporting, MCM must then include the dispute notation on said account.

68.    On or about 11/28/2022, Plaintiff received an updated credit file from Equifax. **Exhibit D.**

69.    That the credit report was updated on 11/01/2022 by MCM.

70.    That the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Equifax, and transmitted to MCM.

71.    Alternatively, that the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Equifax after Equifax failed to notify MCM.

72.    On or about 11/28/2022, Plaintiff received an updated credit file from Experian. **Exhibit D.**

73.    That the credit report was updated on 11/22/2022 by MCM.

74.    That the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Experian, and transmitted to MCM.

75.    Alternatively, that the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Experian after Experian failed to notify MCM.

76.    On or about 11/28/2022, Plaintiff received an updated credit file from Trans Union. **Exhibit D.**

77.    That the credit report was updated on 11/22/2022 by MCM.

78.    That the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Trans Union, and transmitted to MCM.

79.    Alternatively, that the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Trans Union after Trans Union failed to notify MCM.

80.    That the updated 11/28/2022 credit report did not contain updated marked as disputed information.

81.    Upon information and belief, the updated 11/28/2022 credit report contained inaccurate information.

82.    MCM failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

83.    MCM must have voluntarily updated the Plaintiff's alleged account by communicating with Equifax, Experian, and Trans Union.

84.    That MCM furnished information to Equifax, Experian, and Trans Union regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by Equifax, Experian, and Trans Union of the disputes.

85.    That MCM failed to update the account information and mark the account as disputed on the updated 11/28/2022 credit report after Plaintiff disputed the account on 07/28/2022 and was given notice of such by Equifax, Experian, and Trans Union.

86.    In the alternative, if MCM properly updated the account information and marked the account as disputed with Equifax, Experian, and Trans Union after receiving notification of disputes from Plaintiff, then Equifax, Experian, and Trans Union failed to update the account information and mark the account as disputed on the updated 11/28/2022 credit report.

87.    That MCM never properly updated the account information or marked the account as disputed even after receiving information of the disputes from Equifax, Experian, and Trans Union.

88.    Alternatively, Equifax, Experian, and Trans Union never updated the account information and marked the account as disputed even after receiving information of the dispute remark from MCM in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

89.    On a date better known by CR, CR began to attempt to collect an alleged consumer debt from the Plaintiff.

90.    The alleged debt was said to be owed Heaton Eye Associates.

91.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

92.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

93.    The reporting of the alleged debt contains an inaccurate balance.

94.    The reporting of the alleged debt contains an inaccurate status.

95.    The reporting of the alleged debt contains inaccurate delinquency information.

96.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

97.    That CR was reporting the collection account on Plaintiff's credit report with Experian and Trans Union.

98.     That CR was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

99.     CR's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

100.     On or about 07/28/2022, Plaintiff sent dispute letters to Experian and Trans Union notifying the account with CR as disputed. **Exhibit B and Exhibit C.**

101.     These letters provided notice of the inaccurate reporting to Experian and Trans Union.

102.     Once Experian and Trans Union received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CR.

103.      Experian and Trans Union received the letters sent by Plaintiff.

104.     Experian and Trans Union transmitted notice of these disputes to CR via an Automated Credit Dispute Verification form ("ACDV").

105.     CR was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

106.     Alternatively, Experian and Trans Union failed to send notice of the disputes to CR after receiving notice of the disputes from Plaintiff.

107.     After receiving this notice, in any subsequent voluntary reporting, CR must then include the dispute notation on said account.

108.     On or about 11/28/2022, Plaintiff received an updated credit file from Experian. **Exhibit D.**

109.     That the credit report was updated on 09/18/2022 by CR.

110.     That the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Experian, and transmitted to CR.

111.    Alternatively, that the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Experian after Experian failed to notify CR.

112.    On or about 11/28/2022, Plaintiff received an updated credit file from Trans Union.

**Exhibit D.**

113.    That the credit report was updated on 09/17/2022 by CR.

114.    That the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Trans Union, and transmitted to CR.

115.    Alternatively, that the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Trans Union after Trans Union failed to notify CR.

116.    That the updated 11/28/2022 credit report did not contain updated marked as disputed information.

117.    The updated 11/28/2022 credit report contained inaccurate information.

118.    CR failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

119.    CR must have voluntarily updated the Plaintiff's alleged account by communicating with Experian and Trans Union.

120.    That CR furnished information to Experian and Trans Union regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by Equifax, Experian, and Trans Union of the disputes.

121.    That CR failed to update the account information and mark the account as disputed on the updated 11/28/2022 credit report after Plaintiff disputed the account on 07/28/2022 and was given notice of such by Experian and Trans Union.

122.    In the alternative, if CR properly updated the account information and marked the account as disputed with Experian and Trans Union after receiving notification of disputes from Plaintiff, then Experian and Trans Union failed to update the account information and mark the account as disputed on the updated 11/28/2022 credit report.

123.    That CR never properly updated the account information or marked the account as disputed even after receiving information of the disputes from Experian and Trans Union.

124.    Alternatively, Experian and Trans Union never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CR in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

125.    On a date better known by SRS, SRS began to attempt to collect an alleged consumer debt from the Plaintiff.

126.    The alleged debt was said to be owed KLLM Driving Academy Inc.

127.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

128.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

129.    The reporting of the alleged debt contains an inaccurate balance.

130.    The reporting of the alleged debt contains an inaccurate status.

131.    The reporting of the alleged debt contains inaccurate delinquency information.

132.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

133.    That SRS was reporting the collection account on Plaintiff's credit report with Experian.

134.    That SRS was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

135.    SRS's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

136.    On or about 07/28/2022, Plaintiff sent a dispute letter to Experian notifying the account with SRS as disputed. **Exhibit B.**

137.    This letter provided notice of the inaccurate reporting to Experian.

138.    Once Experian received notice of the letter, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case SRS.

139.    Experian received the letter sent by Plaintiff.

140.    Experian transmitted notice of these disputes to SRS via an Automated Credit Dispute Verification form ("ACDV").

141.    SRS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

142.    Alternatively, Experian failed to send notice of the dispute to SRS after receiving notice of the dispute from Plaintiff.

143.    After receiving this notice, in any subsequent voluntary reporting, SRS must then include the dispute notation on said account.

144.    On or about 11/28/2022, Plaintiff received an updated credit file from Experian. **Exhibit D.**

145.     That the credit report was updated on 11/17/2022 by SRS.

146.     That the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Experian, and transmitted to SRS.

147.     Alternatively, that the updated 11/28/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Experian after Experian failed to notify SRS.

148.     That the updated 11/28/2022 credit report did not contain updated marked as disputed information.

149.     The updated 11/28/2022 credit report contained inaccurate information.

150.     SRS failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

151.     SRS must have voluntarily updated the Plaintiff's alleged account by communicating with Experian.

152.     That SRS furnished information to Experian regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by Experian of the dispute.

153.     That SRS failed to update the account information and mark the account as disputed on the updated 11/28/2022 credit report after Plaintiff disputed the account on 07/28/2022 and was given notice of such by Experian.

154.     In the alternative, if SRS properly updated the account information and marked the account as disputed with Experian after receiving notification of dispute from Plaintiff, then Experian failed to update the account information and mark the account as disputed on the updated 11/28/2022 credit report.

16

155.    That SRS never properly updated the account information or marked the account as disputed even after receiving information of the dispute from Experian.

156.    Alternatively, Experian never updated the account information and marked the account as disputed even after receiving information of the dispute remark from SRS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

157.    All of MCM, CR, and SRS's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

158.    All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

159.    Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the MCM, CR, SRS, and/or Equifax, Experian, and Trans Union.

160.    Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by MCM, CR, SRS, and/or Equifax, Experian, and Trans Union.

161.    Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by MCM, CR, SRS, and/or Equifax, Experian, and Trans Union.

162.    Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

163.    Plaintiff's injury-in-fact is fairly traceable to the challenged representations of MCM, CR, SRS, and/or Equifax, Experian, and Trans Union.

164.    Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions**

165.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

166.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

167.    That because Plaintiff disputed the debt, MCM, CR, and SRS, when choosing to contact the consumer reporting agencies, were obligated to inform them of the disputed status of the accounts. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

168.    MCM, CR, and SRS used deceptive and misleading tactics when they communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debts were disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

169.    MCM, CR, and SRS's collection communications are to be interpreted under the "least

sophisticated consumer" standard. See, <u>Goswami v. Am. Collections Enter., Inc.,</u> 377 F.3d 488, 495 (5th Cir. 2004); <u>Taylor v. Perrin, Landry, deLaunay & Durand,</u> 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, <u>Goswami</u>, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

170. MCM, CR, and SRS violated the Plaintiff's right not to be the target of misleading debt collection communications.

171. MCM, CR, and SRS violated the Plaintiff's right to a truthful and fair debt collection process.

172. MCM, CR, and SRS's communications with Plaintiff were deceptive and misleading.

173. MCM, CR, and SRS used unfair and unconscionable means to attempt to collect the alleged debt.

174. MCM, CR, and SRS's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to MCM, CR, and SRS's collection efforts.

175. MCM, CR, and SRS's failure to mark debts as disputed they know or should know are disputed violates § 1692e, 1692e(8) of the FDCPA.

176. MCM, CR, and SRS's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding his situation.

177. Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

178.    Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of MCM, CR, and SRS's conduct.

179.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. MCM, CR, and SRS's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

180.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress, and acute embarrassment.

181.    Defendants MCM, CR, and SRS's violation of § 1692e of the FDCPA renders them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Antonio Alfaro, prays that this Court:

A.    Declare that MCM, CR, and SRS's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Antonio Alfaro, and against MCM, CR, and SRS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

### Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse

182.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

183.     Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

184.     MCM, CR, and SRS's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

185.     MCM, CR, and SRS attempted to coerce Plaintiff into paying alleged debts his otherwise would not have paid by submitting false and inaccurate information to his credit report.

186.     MCM, CR, and SRS could have no other purpose in doing this except to harm Plaintiff's reputation and deprive him of his ability to receive any type of credit line unless he paid the alleged debts.

187.     Defendants MCM, CR, and SRS's violation of § 1692d of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Antonio Alfaro, prays that this Court:

A.     Declare that MCM, CR, and SRS's debt collection actions violate the FDCPA;

B.     Enter judgment in favor of Plaintiff Antonio Alfaro, and against MCM, CR, and SRS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.     Grant other such further relief as deemed just and proper.

**COUNT III: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices**

188.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

189.     Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

190.     MCM, CR, and SRS attempted to collect debts by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

191.     MCM, CR, and SRS used unfair and unconscionable means to attempt to collect the alleged debts.

192.     MCM, CR, and SRS's violation of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Antonio Alfaro, prays that this Court:

A.     Declare that MCM, CR, and SRS's debt collection actions violate the FDCPA;

B.     Enter judgment in favor of Plaintiff Antonio Alfaro, and against MCM, CR, and SRS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.     Grant other such further relief as deemed just and proper.

## Count IV: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information

193.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

194.     Equifax, Experian, and Trans Union violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they published and maintain concerning the Plaintiff.

195.     As a result of this conduct, action and inaction of Equifax, Experian, and Trans Union, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

196.    Equifax, Experian, and Trans Union's conduct, action, and inaction were willful, rendering them liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

197.    The Plaintiff is entitled to recovery costs and attorney's fees from Equifax, Experian, and Trans Union in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Antonio Alfaro, prays that this Court:

A.    Declare that Equifax, Experian, and Trans Union's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Antonio Alfaro, and against Equifax, Experian, and Trans Union, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Antonio Alfaro, and against Equifax, Experian, and Trans Union, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.    Grant other such further relief as deemed just and proper.

## Count V: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information

198.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

199.    Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward

all relevant information to MCM, CR, and SRS; by failing to maintain reasonable procedures with which to filter and verify disputed information in the plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

200.    As a result of this conduct, action and inaction of Equifax, Experian, and Trans Union, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

201.    Equifax, Experian, and Trans Union's conduct, action and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

202.    The Plaintiff is entitled to recovery costs and attorney's fees from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Antonio Alfaro prays that this Court:

A.    Declare that Equifax, Experian, and Trans Union's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Antonio Alfaro, and against Equifax, Experian, and Trans Union, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Antonio Alfaro, and against Equifax, Experian, and Trans Union, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.    Grant other such further relief as deemed just and proper.

### Count VI: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

203.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

204.    Defendants MCM, CR, and SRS violated 15 U.S.C. § 1681s-2(b) by continuing to report the MCM, CR, and SRS representations within Plaintiff's credit file with Equifax, Experian, and Trans Union  without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the MCM, CR, and SRS representations; by failing to review all relevant information regarding same; by failing to accurately respond to MCM, CR, and SRS; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the MCM, CR, and SRS representations to the consumer reporting agencies.

205.    As a result of this conduct, action, and inaction of MCM, CR, and SRS, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

206.    Defendants MCM, CR, and SRS's conduct, action and inaction were willful, rendering them liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

207.    Plaintiff is entitled to recover costs and attorney's fees from MCM, CR, and SRS in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Antonio Alfaro, prays that this Court:

A.    Declare that MCM, CR, and SRS's credit reporting actions violate the FCRA;

B.      Enter judgment in favor of Plaintiff Antonio Alfaro, and against MCM, CR, and SRS, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.      Or, in the alternative, enter judgment in favor of Plaintiff Antonio Alfaro, and against MCM, CR, and SRS, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.      Grant other such further relief as deemed just and proper.

## JURY DEMAND

208.    Plaintiff demands a trial by jury on all Counts so triable.

Dated: September 13, 2023

Respectfully Submitted,

**HALVORSEN KLOTE**

By:      /s/ Joel S. Halvorsen

Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hklawstl.com